United States District Court
Southern District of Texas
**ENTERED**
September 22, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GARY GARCIA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00017 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Gary Garcia is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the Terrell Unit in Rosharon, Texas. Garcia filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 28, 2022. (D.E. 1). Garcia challenges his convictions for aggravated sexual assault of a child and indecency with a child, raising claims of ineffective assistance of counsel and prosecutorial misconduct. Respondent filed a motion for summary judgment, to which Garcia has responded. (D.E. 14, 18). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 14) be **GRANTED** and Garcia's habeas corpus petition be **DENIED** as untimely and, alternatively, on the merits. It is further recommended that a Certificate of Appealability ("COA") be **DENIED**.

I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Garcia was convicted in Nueces County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

II.    BACKGROUND

a.    Petition and Claims

In his § 2254 petition, Garcia first contends that his trial counsel was ineffective at the plea bargain stage because she failed to investigate information found by a court-appointed private investigation agency and she had a conflict of interest with the prosecutor.  (D.E. 1 at 5).  As a result, he argues that his guilty plea was involuntary because counsel failed to inform him of all relevant details, including: (1) the plea offer increased from 20 to 25 years' imprisonment; (2) credibility issues involving the victim's outcry statement and other statements; and (3) new facts in the private investigator's narrative that counsel did not inform him about and did not investigate.  (*Id.* at 37-41).  Garcia also asserts that a conflict of interest existed between his counsel and the original prosecutor in his case because a jailhouse informant indicated that the prosecutor had a sexual relationship with him and that he helped her review criminal cases, and that the prosecutor did not like Garcia's counsel.  (*Id.* at 41-43).

Second, Garcia contends that he was denied his right to a fair trial because the prosecution was aware of facts found by the private investigator but failed to provide those facts to Garcia or the court.  (*Id.* at 7).  Specifically, he argues that the state suppressed the

2

private investigator's report, the statement/letter provided by the jailhouse informant, and the transcript of the guilty plea hearing.  (*Id.* at 45-46).  He also asserts that the trial court erred and favored the prosecution by: (1) requiring him to enter pleas in this felony case as well as a misdemeanor case assigned to the County Court at Law; (2) not giving the proper admonishments on the misdemeanor case; (3) failing to ensure that the guilty plea proceedings were recorded; (4) failing to ensure that defense counsel conducted pretrial investigation in accordance with the order appointing a private investigator; and (5) failing to ensure that Garcia was not prejudiced when the original prosecutor was substituted for another.  (*Id.* at 47-49).

Third, Garcia asserts that the state habeas court did not properly comply with the order for remand entered by the Texas Court of Criminal Appeals ("TCCA").  (*Id.* at 8, 55-60).

As to the timeliness of his petition, Garcia argues that the factual basis of his claims was not discovered until December 18, 2020, when his mother submitted an open records request to Stacun Investigations, Inc., and received a copy of the private investigation agency's report.  (*Id.* at 13-14, 28-31).  He also notes that his post-conviction attorney did not file a state habeas application for ten years despite being hired within the one-year limitation period.  (*Id.* at 14, 31-35).

### b.  State Court Records

In June 2009, Garcia was charged in an indictment with nine counts of aggravated sexual assault of a child, in violation of Texas Penal Code § 22.021 (Counts 1-9), and 16

counts of indecency with a child, in violation of Texas Penal Code § 21.22 (Counts 10-25). (D.E. 10-14 at 6-13). Garcia's trial counsel, Deeanne Galvan, moved the trial court to appoint an investigator to assist with the defense. (D.E. 10-15 at 45). The trial court granted this request and appointed Stacun Investigations. (*Id.* at 47).

Stacun Investigations produced an investigation narrative ("Stacun narrative"), which indicated the following. (*Id.* at 59-68). After reviewing video interviews with the victim, the investigator thought there were some discrepancies in her claims. (*Id.* at 60). In September 2009, Garcia informed counsel that another inmate had information related to his case and the prosecutor, Sandra Eastwood. (*Id.* at 63). The investigator met with this inmate, who stated that he was previously in a relationship with Eastwood and that he reviewed case files with her. (*Id.* at 64). The inmate indicated that Eastwood did not like Galvan. The investigator told Galvan about this information. (*Id.*). The investigator later received a letter from the inmate, although the report does not indicate what it said. (*Id.* at 65). The investigator noted issues in the victim's medical reports, particularly that she reported being abused while living in Florida, but in another interview, she did not note any abuse while she was in Florida. (*Id.* at 65-66). The victim was also somewhat unclear about how often the abuse occurred, initially saying that it was not more than 10 times, but then saying that it was. (*Id.* at 66). Galvan told the investigator that there was no conflict of interest because the prosecutor on the case was Frank Errico, not Eastwood. (*Id.* at 65-

66).[1]  Errico told Galvan that the victim reported that Garcia carved his initials on her wrist, but the investigator noted that, while the medical reports indicated that the victim made superficial cuts on her wrists, there was no mention of any initials.  (*Id.* at 66-67).  On October 30, 2009, Galvan informed the investigator that Garcia had accepted a 20-year plea offer.  (*Id.* at 68).

On October 30, 2009, Garcia pleaded guilty to all 25 counts pursuant to a written plea agreement.  (D.E. 10-14 at 17-18).  The agreement provided that the state would recommend a sentence of 25 years' imprisonment on Counts 1 through 9, and a sentence of 20 years' imprisonment on Counts 10 through 25, to run concurrently.  (*Id.* at 17).  The trial court provided written admonishments to Garcia regarding his plea, and Garcia indicated in writing that he understood the admonishments.  (D.E. 10-15 at 34-43).  The trial court sentenced Garcia in accordance with the state's recommendation and entered judgment.  (D.E. 10-14 at 15).  Garcia did not directly appeal his convictions.

Garcia hired attorney John Gilmore to assist with filing a state habeas application. In a June 8, 2011, letter, Gilmore indicated that he was watching another habeas case, *Overton*, involving the Eastwood issue to see if anything helpful came out of it.  (*Id.* at 122).  In February 2012, Gilmore indicated that there would be a hearing in *Overton* on April 23 and that Eastwood would give testimony that could be helpful.  (*Id.* at 123).

---

[1] The report initially says that Galvan stated that Errico was "not" the prosecutor so there was no conflict of interest, but this appears to be a typo because that statement does not make sense in context, the report later references Errico as the prosecutor, and the court documents indicate that Errico was the prosecutor.

However, he also noted that Garcia should let him know if he was ready to proceed with a habeas application without that information. (*Id.*). In September 2012, Gilmore stated that the trial court found Eastwood's explanations credible and that *Overton* was now before the TCCA. (*Id.* at 124). In October 2014, Gilmore stated that the TCCA had overturned the conviction in *Overton*, but for reasons unrelated to Eastwood's misconduct. (*Id.* at 125). He stated that he would review whether they should proceed with a habeas application or whether they should wait for any more actions against Eastwood. (*Id.*). In May 2015, Gilmore scheduled an appointment to meet with Garcia. (*Id.* at 126).

In June 2016, Gilmore stated that it would be difficult to use the reasoning in *Overton* to benefit Garcia, but that he heard that Eastwood may still be disbarred or criminally prosecuted. (*Id.* at 127). Gilmore thought that either of these actions would significantly improve Garcia's chance of prevailing in a habeas application. He noted that the only claim he could effectively argue otherwise was ineffective assistance, which was unlikely to produce a reversal. (*Id.*). In May 2017, Gilmore informed Garcia that the *Overton* case had been dismissed and that they would pursue a grievance against the prosecutor. (*Id.* at 128). He indicated that this grievance may or may not provide better grounds for Garcia's habeas application. He told Garcia to let him know if he wanted to proceed with what they had or wait for the results of the grievance. Gilmore also noted that, if Garcia wished to proceed now, his family would need to pay the balance of Gilmore's fee. (*Id.*). In May 2019, Gilmore stated that he met with Garcia's family and that they would approach the victim to see if she would recant her allegations. (*Id.* at 129).

6

If that did not work, Garcia would have to decide whether to file his application or continue to wait to see if Eastwood would be disbarred.  Gilmore indicated that he had two possible arguments for the application, ineffective-assistance and prosecutorial misconduct, but that neither were likely to produce a reversal and Garcia only had one chance to file an application.  (*Id.*).  In January 2020, Gilmore stated that there were no updates on Eastwood and reiterated that Garcia's ineffective-assistance and prosecutorial misconduct claims were unlikely to produce a reversal.  (*Id.* at 130).  He also had not heard from Garcia's family regarding whether the victim had recanted.  He provided Garcia a copy with all the documents in his file.  (*Id.*).

Gilmore provided Garcia a 7-page copy of the Stacun narrative on or about January 16, 2020.  (D.E. 1 at 27).  In November 2020, Garcia sent a letter to Galvan stating that Gilmore had provided him a copy of the Stacun narrative.  (D.E. 10-14 at 91).  Garcia sought a copy of the letter the other inmate wrote to the investigator.  (*Id.*).

Gilmore stated the following in a February 2021 affidavit filed in response to a complaint Garcia made with the State Bar of Texas.  (*Id.* at 94).  He was retained by Garcia's family in the autumn of 2010 to investigate potential claims for a state habeas application.  His fee was $5,000, but between September 2010 and May 2019, he was only paid $3,500.  Gilmore met with Garcia in September 2010, and Garcia maintained that he was actually innocent and asked Gilmore to investigate two issues: (1) ineffective assistance of counsel at the plea stage; and (2) prosecutorial misconduct related to Eastwood's relationship with the other inmate.  (*Id.*).  Gilmore was involved in the *Overton*

case and was aware of Eastwood situation but could not find any connection between it and Garcia's claim.  (*Id.* at 95).  Garcia never articulated any misconduct he believed Eastwood committed in connection to his plea, other than that she "had it out for him." Nonetheless, Gilmore and Garcia believed that this claim could become more viable if Eastwood was disbarred or sanctioned, so Gilmore regularly updated Garcia on the issue. However, the TCCA never addressed the misconduct and, to Gilmore's knowledge, Eastwood was never sanctioned by the State Bar.  Garcia maintained that he was promised to be sentenced to 20 years' imprisonment with all counts to run concurrently, but the plea agreement clearly said otherwise and Garcia was properly admonished regarding his plea. (*Id.*).  Thus, Gilmore did not believe that Garcia could raise a meritorious claim of either ineffective-assistance or prosecutorial misconduct.  (*Id.* at 95-96).

Gilmore also stayed in contact with Garcia's family regarding his claim of actual innocence and the possibility that the victim could recant her allegations, but no such evidence was ever provided.  (*Id.* at 96).  Gilmore believed that Garcia should pivot from trying to file a habeas application to trying to prepare a mitigation argument for parole, but the family terminated his representation before this could be discussed in detail.  (*Id.* at 96-97).

In February 2021 correspondence related to his state bar complaint against Gilmore, Garcia indicated that Gilmore provided him with a copy of the Stacun narrative on January 16, 2020.  (D.E. 1-2 at 12).

8

On July 8, 2021, Garcia filed an application for a writ of habeas corpus in state court under Article 11.07 of the Texas Code of Criminal Procedure. (D.E. 10-14 at 21-82). Garcia raised the same claims as in his current petition. (*Id.* at 26-29, 57-82).

The state responded that, as to Garcia's ineffective-assistance claim, he had not shown that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. (D.E. 10-15 at 77-78, 80-81, 83). As to his prosecutorial misconduct claim, the state argued that Garcia had not met his burden to allege and prove facts that would entitle him to habeas relief. (*Id.* at 81). Finally, the state argued that laches barred the court from considering the merits of Garcia's application because Garcia waited 12 years to file his application and the district attorney's file was destroyed in that time, making it so the district attorney's office could no longer try the case. (*Id.* at 84).

In its findings of fact, conclusions of law, and recommendation, the trial court concluded that the assertions made in the state's answer were correct. (*Id.* at 94). Accordingly, the trial court recommended that habeas relief be denied. (*Id.*). However, the TCCA remanded to the trial court for further development of the record regarding Garcia's ineffective-assistance claim, including obtaining a response to the claim from Galvan. (D.E. 10-3 at 1-2). The TCCA ordered the trial court to: (1) making findings of fact and conclusions of law regarding whether Galvan's performance was deficient and whether Garcia would have insisted on going to trial but for her deficient performance; and (2) determine whether Garcia's delay in presenting his claims prejudiced the state. (*Id.* at 2).

9

Galvan stated the following in a September 2021 affidavit. (D.E. 10-13 at 25). She reviewed the trial court's file before preparing the affidavit. She was extremely diligent in her representation of Garcia and filed several pre-trial motions. (*Id.*). Based on the allegations made by the victim, Galvan believed that the case was going to be difficult. (*Id.* at 25-26). Garcia also had a criminal history that could be used against him at trial, and the sentences could be imposed consecutively rather than concurrently. (*Id.* at 26). She always gave copies of all discovery to her clients and always advised them of their right to have a jury trial. She also always advised clients of the details of plea agreements and ensured that they understood their rights and what they were signing. On October 29, 2009, both Galvan and state announced that they were ready for trial. The next day, Garcia opted to accept the plea offer instead. Finally, although Garcia claimed there was a conflict of interest between her and the prosecutor, there was not. (*Id.*).

In a supplemental answer, the state reiterated that laches barred the court from reviewing the merits of the case. (*Id.* at 11). The state also reiterated its other arguments, supplemented by Galvan's affidavit. (*Id.* at 16-17, 20-21, 22-23). The trial court again concluded that the arguments in the state's supplemental answer were correct, stating that Galvan provided effective assistance and that laches prevented the court from deciding the merits of the application. (*Id.* at 32).

On September 29, 2021, the TCCA denied Garcia's Article 11.07 application without written order on the findings of the trial court without hearing and on the TCCA's independent review of the record. (D.E. 10-1 at 1).

10

## III.  DISCUSSION

### a.    Standard of Review

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This is a difficult standard to meet. *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Where a state court decides a prisoner's federal claim on the merits in a reasoned opinion, the federal court merely "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Even summary rulings by state courts are afforded deference under § 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision. *Harrington*, 562 U.S. at 99, 102.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

    *b.*   *Timeliness*

In the motion for summary judgment, Respondent first argues that Garcia's petition is time-barred. (D.E. 14 at 4). Respondent contends that, although Garcia argues that his petition is timely because he did not discover the factual predicate underlying his claims until December 2020, he could have discovered it earlier through the exercise of due diligence. (*Id.* at 5-6). Respondent argues that a diligent petitioner would not wait over 10 years after his conviction for his mother to obtain records from his own investigator or attorney. (*Id.* at 6). However, Respondent asserts that even if the Court grants Garcia a new factual predicate date, his own records show that he actually knew of the Stacun narrative by January 16, 2020, meaning that his one-year limitations period expired on January 16, 2021. (*Id.* at 6-7). Respondent argues that Garcia is not entitled to statutory tolling because he did not file his Article 11.07 application until July 2021, after the limitations period expired. (*Id.* at 7-8). Finally, Respondent asserts that Garcia is not entitled to equitable tolling because Gilmore's decision not to file a state habeas application for over 10 years was part of a coordinated strategy with Garcia, Garcia waited over 10 years to terminate his representation regardless, and that even if equitable tolling applies, Garcia's petition would still be untimely. (*Id.* at 8-10).

Garcia responds that Gilmore's delay in filing a state habeas application represents an extraordinary circumstance that prevented Garcia from filing a state application earlier. (D.E. 18 at 3-4, 7-9). He argues that he did not discover the factual predicate of his claims until his mother obtained the complete Stacun narrative in December 2020, which was

three pages longer than the copy he obtained from Gilmore.  (*Id.* at 4, 9).  He argues that the Stacun narrative shows that Galvan failed to follow up potential meritorious leads and failed to advise Garcia of those leads before he pled guilty.  (D.E. 18 at 10-11).

A one-year limitation period applies to an application for a writ of habeas corpus filed by a person in custody pursuant to a state court judgment.  28 U.S.C. § 2244(d)(1).  The limitation period runs from the latest of either: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States was removed; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court; or (4) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *Id.* § 2244(d)(1).

A notice of direct appeal of a criminal conviction must be filed within 30 days after the sentence is imposed.  Tex. R. App. P. 26.2(a).

The time during which a properly filed state collateral review application is pending is not counted toward the limitation period.  28 U.S.C. § 2244(d)(2).  A state habeas petition filed after the limitation period ends does not toll the limitation period under § 2244(d)(2).  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The timeliness provision in § 2244(d) is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 634 (2010).  A petitioner is entitled to equitable tolling only if he can show that: (1) he has been diligently pursuing his rights; and (2) some extraordinary

circumstance stood in his way.  *Id.* at 649.  Such a circumstance exists where, for example, the plaintiff was misled by the defendant about the cause of action or was otherwise prevented in some extraordinary way from asserting his rights.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).  A standard claim of excusable neglect is insufficient. *Id.*  Ignorance of the law generally does not excuse prompt filing, even for a *pro se* prisoner. *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000).  The failure to satisfy the limitation period must result from "external factors" beyond the petitioner's control, and delays caused by the petitioner do not qualify.  *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Here, Garcia's petition is untimely, and he has not established that he is entitled to statutory or equitable tolling.  First, using the time specified in § 2244(d)(1) to determine the limitations period, he had 30 days to file a direct appeal following the imposition of the sentence.  Tex. R. App. P. 26.2(a).  Because he did not file a direct appeal, his conviction became final at the expiration of those 30 days on November 30, 2009.[2]  (*See* D.E. 10-14 at 15).  His time to file a § 2254 petition expired one year later on November 30, 2010.  28 U.S.C. § 2244(d)(1).  He did not file his § 2254 petition until January 28, 2022.  As to

---

[2] November 29, 2009, was a Sunday.

statutory tolling, Garcia did not file his state habeas application until after the expiration of the limitations period, and therefore it does not toll the limitations period. *Scott*, 227 F.3d at 263.

Finally, Garcia has not established that he is entitled to equitable tolling because he has not shown any extraordinary circumstance that prevented him from filing his § 2254 petition earlier. *Holland*, 560 U.S. at 649. Garcia's primary argument in favor of equitable tolling is that his hired state habeas counsel delayed filing an application for over 10 years, which he contends qualifies as an extraordinary circumstance that was out of his control. However, the record indicates that the delay in filing a state habeas application was a joint strategic decision of Gilmore, Garcia, and Garcia's family. The record shows that Gilmore regularly sent Garcia letters over the course of the 10 years to update him on the developments regarding Eastwood. (D.E. 10-14 at 122-31). Gilmore stated multiple times that they could proceed with a state habeas application on other claims if Garcia wanted to. (*Id.* at 123, 128-29). Garcia has not argued, much less presented any evidence, that he told Gilmore to proceed at any time and that Gilmore refused to do so. Gilmore also stated in several letters that Garcia's other potential claims were unlikely to produce a reversal. (*Id.* at 127, 129-30). If Garcia disagreed and sought to move forward on those claims anyway, he could have either directed Gilmore to proceed or terminated Gilmore's representation, as he eventually did. These were not decisions outside of Garcia's control, and the strategic decision to wait to file his state habeas application was not an external factor that prevented him from filing earlier. *Wilson*, 442 F.3d at 875.

16

Garcia implicitly acknowledges that his petition is untimely under this framework and instead cites § 2244(d)(4) to assert that the limitations period should run from the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  Garcia argues that, under this framework, the limitations period began to run on December 18, 2020, when his mother obtained the complete Stacun narrative.  However, Garcia has not shown that the factual predicate of his claims could not have been discovered sooner through the exercise of due diligence.  As an initial matter, Garcia was aware that his plea agreement resulted in a 25-year sentence rather than a 20-year sentence at the time his sentence was imposed, so his § 2244(d)(4) argument is inapplicable to that claim.  Moreover, Garcia acknowledges in his petition that he received a 7-page version of the Stacun narrative in January 2020.  (D.E. 1 at 27).  Although more details are contained in the final three pages of the report, many of the facts that form the basis of Garcia's claims were also discussed in the first seven pages of the report.  (*See* D.E. 10-15 at 49-55).  However, most importantly and as discussed above regarding equitable tolling, the record shows that the extensive delay in filing an Article 11.07 application was a joint decision between Gilmore, Garcia, and Garcia's family, and it was this joint decision and lack of diligence that prevented Garcia from obtaining the Stacun narrative earlier.  The record also indicates that the claims that Garcia raises in his petition are largely the same as claims he discussed with Gilmore as early as 2010, namely, ineffective assistance at the plea stage and prosecutorial misconduct related to Eastwood's relationship with the other inmate.  (D.E. 10-14 at 94).

17

Accordingly, Garcia's petition is untimely and he is not entitled to statutory or equitable tolling.

     *c.   Merits*

Alternatively, Respondent argues that Garcia's claims are meritless or waived by his guilty plea.  (D.E. 14 at 16).  Respondent argues that the record shows that Garcia voluntarily signed the plea agreement and that his assertions otherwise are supported only by his own self-serving statements.  (*Id.* at 19).  Moreover, Respondents contends that Garcia cannot show that the state court's denial of his claims was contrary to, or involved an unreasonable application of, clearly established federal law.  (*Id.*).

Garcia responds that the state court's reliance on laches was misplaced.  (D.E. 18 at 14-16).  Garcia argues that he relies on the following new facts he discovered through the Stacun narrative: (1) conflicting reports by the victim regarding cuts to her arms and wrists; (2) the other inmate's statement regarding his relationship with Eastwood; (3) subpoenas issued to his other daughters relating to the credibility of the victim; (4) that he agreed to a 20-year plea deal rather than a 25-year plea deal; and (5) that the state was aware of the ongoing pretrial investigation and aware of facts that Galvan failed to advise him of.  (*Id.* at 17-18).  He also reiterates that the trial court did not properly comply with the TCCA's remand order.  (*Id.* at 18-19).

"An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'"  *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir.

1995) (quoting *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987)).  Furthermore, "infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief."  *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984).

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  *Id.* at 687-88.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690.  In the context of a guilty plea, "if a defendant is represented by counsel and pleads guilty upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

19

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 695.  In the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Federal court review of a state court's denial of an ineffective-assistance claim is "doubly deferential" because the court must give deference both to counsel's performance and to the state court's conclusion.  *Cullen*, 563 U.S. at 190.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 562 U.S. at 105.

"A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent."  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  "Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  When a defendant knowingly and voluntarily enters a guilty plea, he is precluded from later challenging the deprivation of

rights that occurred prior to the entry of the guilty plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The prosecution must provide evidence favorable to the accused upon request. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The failure to do so is a violation of due process if the evidence is material to guilt or punishment.  *Id.*  This includes evidence that affects the credibility of a witness.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  To succeed on a *Brady* claim, a defendant must show that the evidentiary suppression undermines confidence in the outcome of the trial.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Here, as an initial matter, Garcia's third claim regarding the state trial court's compliance with the TCCA's remand order is not cognizable as a standalone claim in a federal habeas petition because "infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief." *Vail*, 747 F.2d at 277.  Further, although the state trial court concluded that laches prevented the court from deciding the merits of the application, it also alternatively concluded that the record showed that Galvan provided effective assistance and that Garcia's other claims were without merit.  (D.E. 10-13 at 32). Notably, the Respondent's arguments on summary judgment do not rely on laches.

On the merits, Respondent's contention that Garcia waived his claims through his plea agreement is incorrect because each of Garcia's claims regarding ineffective-assistance, prosecutorial misconduct, and the trial court's admonishments at the plea hearing relate to the voluntariness of that plea.  However, Garcia has not shown that the

state court's denial of these claims was contrary to, or an unreasonable application of, federal law. As to his ineffective assistance claims, Galvan's affidavit states that she always gave copies of all discovery to her clients, always advised them of their right to have a jury trial, and always advised clients of the details of plea agreements and ensured that they understood their rights and what they were signing. (D.E. 10-13 at 26). In denying the Article 11.07 application, the state court made an implicit factual finding in Galvan's favor regarding the advice she gave to Garcia. (*Id.* at 32). This factual finding is presumed to be correct, and Garcia has not rebutted that presumption with clear and convincing evidence. *Garcia*, 454 F.3d at 444.

Notably, Garcia signed a plea agreement indicating that he would receive sentences of 25 years on each of the charges for aggravated sexual assault of a child. (D.E. 10-14 at 17). His bare assertions that he did not know that the plea agreement was for 25 years are not supported by the record. Garcia also was aware of the alleged conflict of interest between Galvan and Eastwood at the time of the plea because he personally spoke to the other inmate about it, but he chose to plead guilty anyway. (D.E. 10-15 at 63). Regardless, Eastwood was not the prosecutor at the time of his plea. (*See* D.E. 10-14 at 15). Finally, although the Stacun narrative notes some discrepancies in the victim's accounts of what happened, this does not establish that Galvan failed to investigate these issues. (*See* D.E. 10-15 at 60, 65-68). Indeed, the narrative indicates that Galvan and the investigator spoke about these issues. (*Id.*). Thus, Garcia has not shown that the state court's denial of this

claim was contrary to, or an unreasonable application of, federal law because he has not shown that counsel's performance was deficient.

As to his prosecutorial misconduct claim, Garcia's allegations do not show that the prosecution withheld any information from him. The Stacun narrative was prepared by an investigator working for Garcia and his counsel, not by the state. (*Id.* at 45-47). It was not the state's evidence to turn over. Moreover, the investigator largely reviewed evidence already obtained by Garcia and counsel, meaning the state did not withhold that evidence either. (*See id.* at 59-68). As to the plea hearing transcript, this would not have been available until after trial, and therefore is not relevant to a prosecutorial misconduct claim under *Brady*. *Kyles*, 514 U.S. at 434. Regardless, as indicated in the attachments to Garcia's petition, there is no transcript of the plea hearing because Garcia did not directly appeal his convictions, did not file a state habeas application for over a decade, and no one ordered a copy of the transcripts. (*See* D.E. 1-2 at 25-29). Lastly, Garcia's various claims regarding the trial court are supported only by Garcia's bare assertions and otherwise lack merit. *See Ross*, 694 F.2d at 1011.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Garcia has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, reasonable jurists would not find it debatable that Garcia's claims are untimely and, alternatively, fail on the merits. Therefore, it is further recommended that any request for a COA be denied.

## V.    RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 14) be **GRANTED** and Garcia's habeas corpus petition be

**DENIED**.   It is further recommended that a Certificate of Appealability ("COA") be

**DENIED**.

Respectfully submitted on September 22, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).